FILED

AUG 15 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No.  10-14387-B-7
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀DC No. PLF-3
Marianne Moreno,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Debtor.⠀⠀⠀⠀⠀⠀)
_____)

**MEMORANDUM DECISION REGARDING MOTION TO IMPOSE
SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION**

Peter L. Fear, Esq., of the Law Offices of Peter L. Fear, appeared on behalf of the debtor, Marianne Moreno.

Erin A. Maloney, Esq., of Fiore, Racobs & Powers, appeared on behalf of secured creditor, Canyon Lake Property Owners Association.

⠀⠀⠀⠀⠀Before the court is a motion to impose sanctions for violation of the discharge injunction (the "Motion"), filed by the debtor Marianne Moreno (the "Debtor").  The Debtor contends that the respondent, Canyon Lake Property Owners Association (the "Association"), violated the discharge injunction by obtaining a post-petition default judgment against the Debtor in state court.  The amount of the judgment was based in part on two delinquent post-petition payments, one that the Association had misapplied to the Debtor's account and another that the Association contends was paid late.  The

1 judgment also included attorney's fees and interest that had accrued on account of both
2 the post-petition debt and pre-petition discharged debt. The Debtor requests monetary
3 sanctions in the form of her attorney's fees pursuant to the court's civil contempt
4 authority under § 105(a).[1] She also requests declaratory and injunctive relief relating to
5 enforcement of the default judgment. Because the default judgment does appear to
6 include attorney's fees and interest relating to the discharged debt, the Motion will be
7 granted.

8      This memorandum contains the court's findings of fact and conclusions of law
9 required by Federal Rule of Civil Procedure 52(a), made applicable to this contested
10 matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The bankruptcy
11 court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C.
12 §§ 105 and 524, and General Order Nos. 182 and 330 of the U.S. District Court for the
13 Eastern District of California. This is a core proceeding as defined in 28 U.S.C.
14 § 157(b)(2)(A).

15 **Background and Findings of Fact.**

16      Before and during her bankruptcy, the Debtor owned real property located in
17 Canyon Lake, California (the "Property"), which was part of a common interest
18 development. The Property was subject to the Declaration of Covenants, Conditions and
19 Restrictions for Canyon Lake Property Owners Association, a document recorded against
20 the Property (the "CC&Rs"). Under California law, the CC&Rs was subject to the
21 Davis-Stirling Common Interest Development Act, California Civil Code §§ 1350–1378,
22 the body of law that governs the relationship between homeowners and homeowners'

23
24
25

---

26 [1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy
Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules
27 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L.
28 No. 109-8, 119 Stat. 23 (enacted April 20, 2005).

1  associations and regulates recorded declarations of covenants, conditions, and

2  restrictions.[2]

3    The CC&Rs imposed upon the Debtor a monthly payment obligation and

4  provided the Association with corresponding enforcement rights. In 2010, the Debtor

5  had an obligation to pay the Association a monthly assessment in the amount of $205

6  plus an installment charge of $10 for a total of $215 (the "Assessment").[3] The Debtor

7  was personally liable for the monthly Assessments until she no longer held title to the

8  Property.[4] The Assessments were levied on the first day of each month. Any payment

9  not received within fifteen days was deemed delinquent on the sixteenth day of the

10  month.[5]

11    If an Assessment became delinquent, the Association had the right to recover

12  (1) late charges, at $20 per delinquent Assessment;[6] (2) reasonable costs incurred in

13

14

15

16    [2] The CC&Rs is referred in the Association's demand letter to the Debtor dated February

17  18, 2009, as the basis for the Debtor's liability to the Association and its enforcement efforts.
    However, neither party submitted a copy of the CC&Rs into evidence. The court will therefore

18  refer to the relevant California statutes and the other evidence, specifically the Association's

19  accounting referenced below, to discern the pertinent rights and duties of the parties.

20    [3] See Cal. Civ. Code § 1366(a) ("[T]he association shall levy regular and special

21  assessments sufficient to perform its obligations under the governing documents and this title.").

22    [4] See Cal. Civ. Code § 1466 ("No one, merely by reason of having acquired an estate
    subject to a covenant running with the land, is liable for a breach of the covenant before he

23  acquired the estate, or after he has parted with it or ceased to enjoy its benefits.").

24    [5] See Cal. Civ. Code § 1366(e) ("Regular and special assessments levied pursuant to the

25  governing documents are delinquent 15 days after they become due, unless the declaration
    provides a longer time period.").

26

27    [6] See Cal. Civ. Code § 1366(e)(2) ("If an assessment is delinquent the association may
    recover . . . [a] late charge not exceeding 10 percent of the delinquent assessment or ten dollars

28  ($10), whichever is greater, unless the declaration specifies a late charge in a smaller amount.").

3

collecting the delinquent Assessment, including reasonable attorney's fees;[7] and (3) accrued interest, at a rate of 12% per annum on the outstanding account balance (collectively, the "Additional Charges").[8]  The Association calculated and charged the accrued interest on the first day of every month, by taking 1% of the balance in the Debtor's account on the first day of the prior month.[9]  Additionally, the Association charged late fees on the sixteenth day of each month and recorded any attorney's fees incurred during a month on the last day of that month.

The Debtor stopped paying the monthly Assessments beginning in August 2008. In February 2009, the Association sent a demand letter to the Debtor informing her that the Association had recorded a lien against the Property to secure the Debtor's unpaid obligation (the "Assessment Lien").  The Association demanded payment in the amount of $2,552.01.  The Assessment Lien was junior in priority to the consensual liens against the Property and was substantially undersecured.[10]  A year later, in January 2010, the Association filed a civil action in the Riverside County Superior Court seeking a judicial foreclosure of the Assessment Lien and a money judgment against the Debtor (the "State Court Action").  The Debtor did not file a responsive pleading and her default was entered on April 5, 2010.

---

[7] *See* Cal. Civ. Code § 1366(e)(1) ("If an assessment is delinquent the association may recover . . . [r]easonable costs incurred in collecting the delinquent assessment, including reasonable attorney's fees.").

[8] *See* Cal. Civ. Code § 1366(e)(3) ("If an assessment is delinquent the association may recover . . . [i]nterest on all sums imposed in accordance with this section, including the delinquent assessments, reasonable fees and costs of collection, and reasonable attorney's fees, at an annual interest rate not to exceed 12 percent, commencing 30 days after the assessment becomes due, unless the declaration specifies the recovery of interest at a rate of a lesser amount.").

[9] California Civil Code § 1366(e)(3) permits interest to be calculated thirty days after an assessment becomes due.

[10] The Debtor's schedules list two mortgages held by BAC Home Loans totaling $433,827.  The Property is valued at $220,000.

4

1        The Debtor then filed a voluntary petition under chapter 7 on April 23, 2010,

2   which temporarily stayed prosecution of the State Court Action. She had not made any

3   Assessment payments since July 2008 and the outstanding balance in her account, as of

4   the petition date, had increased to $8,025.50. However, for reasons that are explained

5   below, once the Debtor was in bankruptcy she did resume payment of the post-petition

6   Assessments. She received her discharge on August 9, 2010, and the case was closed on

7   September 17. On September 28, 2010, the Debtor's counsel sent a letter to the

8   Association demanding that all post-petition payments from the Debtor be applied to the

9   post-petition Assessments. On October 19, the Association's attorney responded with a

10  letter acknowledging the Debtor's discharge and confirming that the payments received

11  from the Debtor had been applied only to the post-petition debt.

12        After entry of the Debtor's discharge and termination of the automatic stay, the

13  Association resumed prosecution of the State Court Action by filing therein a notice of

14  termination of the automatic stay with a copy of the discharge order. On or about

15  November 2, 2010, the Association filed a request for entry of a judgment by default

16  supported by evidence from the Association as to the amount then due. Again, the

17  Debtor did not respond, and on December 8, the state court entered a default judgment in

18  favor of the Association (the "Default Judgment").

19        The Default Judgment consisted of two parts. The first part related to the

20  Association's lien rights, allowing the Association to foreclose its Assessment Lien

21  against the Property (the "Foreclosure Judgment"). The state court determined the entire

22  underlying debt secured by the Assessment Lien, including both pre- and post-petition

23  Assessments and Additional Charges, to be $10,725.86 as of November 2, 2010. The

24  Debtor does not dispute the validity of the Foreclosure Judgment or the Association's

25  right to foreclosure against the Property for the full amount owed on her account. The

26  following itemization was included in the Default Judgment to show what was due for

27  purposes of the foreclosure:

28  / / /

5

| | |
|---|---:|
| Assessments (Aug. 1, 2008 through Nov. 1, 2010) | $  5,930.00 |
| Less Payments Received | (1,075.00) |
| Late Charges (Aug. 16, 2008 through Oct. 16, 2010) | 491.00 |
| Interest | 1,367.42 |
| Attorney's Fees | 3,242.44 |
| Collection Costs | 400.00 |
| Court Costs | 370.00 |
| Total | $ 10,725.86 |

The second part of the Default Judgment was a money judgment against the Debtor, who was adjudged to be liable for unpaid post-petition Assessments and Additional Charges (the "Personal Judgment"). The Personal Judgment specifically acknowledged the Debtor's chapter 7 discharge and the fact that she had been relieved of any liability for that portion of debt (as reflected in the Foreclosure Judgment) that accrued prior to April 23, 2010. The amount of the Personal Judgment was determined by the state court to be $2,700.36, based on the following itemization:

| | |
|---|---:|
| Assessments (May 1, 2010 through Nov. 1, 2010) | $ 1,505.00 |
| Less Payments Received | (1,075.00) |
| Late Charges (May 16, 2010 through Oct. 16, 2010) | 80.00 |
| Interest | 635.56 |
| Attorney's Fees | 1,075.00 |
| Total | $ 2,700.36 |

The amount of the Personal Judgment was calculated using the Association's accounting record. The Debtor introduced a copy of this accounting into evidence and it is attached hereto as Exhibit "A" (the "Accounting"). Based on the Accounting, the Association contends that it only requested post-petition Assessments and Additional Charges in its calculation of the Personal Judgment. The Association's original Accounting also reflects that several of the post-petition Assessments were paid late, a fact that the Debtor strenuously disputes, and that two others were missing between April 23 and November 2, 2010. The Debtor contends that all of her post-petition payments were made timely and disputes any liability for late fees and interest relating to the "missing" payments.

After the Debtor filed this Motion, the Association corrected its Accounting to show that the Debtor had actually paid all of her post-petition Assessments during the

6

seven months since the petition was filed, although three of those payments were still recorded by the Association as being late and with late fees being charged for those months (the "Modified Accounting"). The Modified Accounting gave the Debtor credit for the two "missing" post-petition payments and deleted two late charges. One of the post-petition payments (August 2010) had been mistakenly credited to another homeowner's account. For reasons that remain in dispute, another payment (November 2010) was not applied to the Debtor's account until after the Association submitted its application for the Default Judgment. According to the Modified Accounting, the Debtor was still liable for $2,250.36. However, even after correcting its Accounting, the Association did not return to the state court to amend or correct the Personal Judgment. In addition, the Association did not make any adjustments for the post-petition attorney's fees and interest it had erroneously charged against the Debtor in the original Accounting (discussed below).

In April 2011, before the Association exercised its rights pursuant to the Foreclosure Judgment, the senior lienholder foreclosed against the Property, thereby extinguishing both the Debtor's and the Association's interest in the Property. Then, in June and July of 2011, the Association began to enforce the Personal Judgment by recording abstracts of judgment against the Debtor in four counties. The Association has since withdrawn those four abstracts and ceased any collection efforts pending a ruling on this Motion.

The Debtor's bankruptcy case was reopened in February 2011. In July 2011, after the abstracts of judgment had been recorded, the Debtor filed this Motion requesting sanctions against the Association for violating the discharge injunction. While the Debtor has never contested the Association's right to foreclose against the Property, the Debtor does object to the Association's efforts to obtain and enforce the Personal Judgment. She argues that all of her post-petition payments were made timely and that the Personal Judgment could only have been based on the discharged pre-petition debt.

1    The Association counters that the Personal Judgment only relates to post-petition debt

2    that was not discharged in the bankruptcy.

3    **Discussion and Conclusions of Law.**

4          The Effect of the Discharge under § 524.  To begin, it is important to consider

5    how the chapter 7 discharge applies to the Debtor's obligation to the Association and to

6    the Default Judgment.  Section 524 of the Bankruptcy Code recites the effect of a

7    discharge:

8                (a) A discharge in a case under this title—

9                      (1) voids any judgment at any time obtained, to the extent
     that such judgment is a determination of the personal liability of the debtor
10    with respect to any debt discharged under [§ 727], whether or not
     discharge of such debt is waived;

11

12                      (2) operates as an injunction against the commencement or
     continuation of an action, the employment of process, or an act, to collect,
     recover or offset any such debt as a personal liability of the debtor, whether
13    or not discharge of such debt is waived[.]

14          This Code section is quite expansive.  The discharge injunction under § 524(a)(2)

15    applies to *all entities* and encompasses *all acts* to collect or recover a discharged debt as

16    a personal liability of the debtor.  *Lone Star Sec. & Video, Inc. v. Gurrola (In re*

17    *Gurrola)*, 328 B.R. 158, 170 (9th Cir. BAP 2005).  Pursuant to § 524(a)(1), all

18    judgments purporting to establish a debtor's personal liability on a discharged debt are

19    not voidable but void ab initio.[11]  *In re Pavelich*, 229 B.R. 777, 782 (9th Cir. BAP 1999).

20          Due to the anti-waiver language within § 524(a), the "defense of discharge in

21    bankruptcy is . . . an absolute, nonwaivable defense," rather than a waivable, affirmative

22    defense.  *Gurrola*, 328 B.R. at 170 (citation omitted).  Given the absolute nature of this

23    defense, a discharged debtor is relieved from a duty to raise the defense in a post-

24    discharge state court proceeding.  *See Pavelich*, 229 B.R. at 781–82 (citing legislative

25    history).  Thus, even if a debtor fails to assert the discharge defense in state court, the

26

27          [11] The term "void ab initio" means "null from the beginning."  Black's Law Dictionary
28    1709 (9th ed. 2009).

8

1  debtor may nevertheless bring a creditor's violation of the discharge injunction to the

2  attention of the bankruptcy court.

3  However, the chapter 7 discharge is not without a number of exceptions. One of

4  those exceptions relates to post-petition debts owed to a homeowners' association. It is

5  found in § 523(a)(16), which provides:

6  (a) A discharge under [§ 727] does not discharge an individual
   debtor from any debt—

7

8  (16) for a fee or assessment that becomes due and payable
   after the order for relief to a membership association with respect to the
   debtor's interest in a unit that has condominium ownership, in a share of a

9  cooperative corporation, or a lot in a homeowners association, for as long
   as the debtor or the trustee has a legal, equitable, or possessory ownership

10 interest in such unit, such corporation, or such lot, but nothing in this
   paragraph shall except from discharge the debt of a debtor for a

11 membership association fee or assessment for a period arising before entry
   of the order for relief in a pending or subsequent bankruptcy case[.]

12

13 Here, the Debtor had not paid any Assessments since July 2008. It is undisputed

14 that her obligation to the Association for Assessments and Additional Charges accruing

15 prior to April 23, 2010, the petition date, was discharged in the bankruptcy. However, in

16 an effort to avoid the effect of § 523(a)(16), the Debtor did resume paying her post-

17 petition Assessments beginning in May 2010, the first month after the petition was filed.

18 The Association obtained a Personal Judgment against the Debtor for $2,700.36.

19 The Debtor contends that the Association applied some of her post-petition payments to

20 pre-petition debt in violation of the discharge injunction and that the Personal Judgment

21 was based on post-petition Assessments that she had already paid. She therefore argues

22 that the Default Judgment is void under § 524(a)(1).[12] In conjunction, she contends that

23

24  [12] Under the Rules, a proceeding to determine the nondischargeability of a particular debt

25 requires an adversary proceeding. *See* Fed. R. Bankr. P. 7001(6). The current proceeding is a
   contested matter initiated by motion under Rule 9014, rather than an adversary proceeding.

26 Normally, any determination made by the court as to the nondischargeability of the debt in a
   motion would have been reversible error. *See In re Boni*, 240 B.R. 381, 385–86 (9th Cir. BAP

27 1999). Nevertheless, it is proper to address the nondischargeability issue here for two reasons.

28 First, the § 523(a)(16) issue was raised by the Association in its supplemental brief,

9

1  the Association's conduct relating to the entry and enforcement of the Personal Judgment

2  violated the discharge injunction under § 524(a)(2).

3      For purposes of this discussion, there are three basic components to the Personal

4  Judgment: Unpaid Assessments and late charges, interest, and attorney's fees. To

5  determine whether the Association has violated the discharge injunction, the court must

6  examine the evidence and the Association's Accounting and determine what debts were

7  actually included in the Personal Judgment.

8      Pre-Petition vs. Post-Petition Debts. A chapter 7 discharge relieves the debtor of

9  personal liability for all claims or debts that arose before the filing of the petition, except

10  for those specified under § 523. § 727(b). In a chapter 7 case, the question of whether a

11  particular debt falls within the discharge will depend on *when* that claim *arose*. *Siegel v.*

12  *Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 532 (9th Cir. 1998) (citations omitted).

13  The answer to that question is controlled by federal law.[13] *Id.* (citations omitted).

14      "A claim arises, for purposes of discharge in bankruptcy, at the time of the events

15  giving rise to the claim." *In re Ybarra*, 424 F.3d 1018, 1022–23 (9th Cir. 2005) (internal

16  quotation marks omitted) (citing *O'Loghlin v. Cnty. of Orange*, 229 F.3d 871, 874 (9th

17  Cir. 2000)); *see also Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925,

18  930–31 (9th Cir. 1993). If the claim arises out of a contract, the claim ordinarily arises at

19

20  _____

21  effectively waiving its procedural right to have the issue decided in an adversary proceeding.
    Second, the Debtor has requested relief in the form of civil contempt sanctions against the

22  Association for its discharge violations. As the Ninth Circuit has recently opined, "[C]ontempt
    proceedings for a violation of § 524 must be initiated by motion in the bankruptcy case under

23  Rule 9014 and not by adversary proceeding." *Barrientos v. Wells Fargo Bank*, 633 F.3d 1186,
    1191 (9th Cir. 2011); *see also* Fed. R. Bankr. P. 9020 ("Rule 9014 governs a motion for an order

24  of contempt made by the United States trustee or a party in interest."). Resolution of the

25  dischargeability issue is a necessary predicate to the civil contempt issue.

26      [13] A "debt" is defined as a "liability on a claim," § 101(12), and a "claim" is defined as a

27  "right to payment," § 101(5)(A). The Code views these two terms as being "coextensive, flip
    sides to the same coin." *In re Egebjerg*, 574 F.3d 1045, 1049 (9th Cir. 2009) (citations omitted)

28  (internal quotation marks omitted).

1    the time the parties execute the contract, not when a subsequent contingency triggering

2    the claim occurs. *See Emps.' Ret. Sys. of Haw. v. Osborne (In re THC Fin. Corp.)*, 686

3    F.2d 799, 803–04 (9th Cir. 1982) (determining when indemnification claim arose).

4    Therefore, even if a claim arising out of a pre-petition contract does not accrue or mature

5    until after the petition date, that claim still constitutes a debt arising pre-petition and is

6    subject to the discharge. *See Siegel*, 143 F.3d at 532–33.

7          Here, the Debtor's obligation to pay Assessments and Additional Charges did not

8    arise pursuant to a pre-petition contract. Rather, it arose pursuant to the CC&Rs which

9    governed the relevant rights and duties of the parties. *See* Cal. Civ. Code §§ 1353, 1366.

10   Under California law, the CC&Rs is not viewed as a contract but instead considered a

11   covenant running with the land. *See* Cal. Civ. Code §§ 1461–1463 (providing that a

12   covenant for the payment of assessments upon land is a covenant that runs with the

13   land); *see also* Cal. Civ. Code § 1354 (providing that a covenant in a declaration of

14   covenants, conditions, and restrictions may be enforced as an equitable servitude).

15         When state law construes an obligation to pay such assessments as a covenant

16   running with the land, rather than a pre-petition contractual obligation, the corresponding

17   right to recover *post-petition* assessments is "based on a property interest not subject to

18   the discharge." *Foster v. Double R Ranch Ass'n (In re Foster)*, 435 B.R. 650, 661 (9th

19   Cir. BAP 2010) (considering the issue of post-petition assessments in chapter 13 case).

20   The "debtor's liability is not rooted in the pre-bankruptcy past, but rather is rooted in the

21   estate in property itself." *Id.* at 660–61 (citation omitted) (internal quotation marks

22   omitted). Since a payment obligation under a declaration of covenants, conditions, and

23   restrictions is not considered a contractual obligation under California law, "an

24   association's claim for post-petition dues does not arise until the dues are assessed." *In

25   re Rosenfeld*, 23 F.3d 833, 837 (4th Cir. 1994), *cited with approval, Foster*, 435 B.R.

26   650.

27         During the time that the Debtor held title to the Property, the Association's right

28   to levy Assessments arose on the first day of every month. *See* Cal. Civ. Code § 1366(a);

11

1   *see also* Cal. Civ. Code § 1367.1(a) ("A regular or special assessment and any late

2   charges, reasonable fees and costs of collection, reasonable attorney's fees, if any, and

3   interest, if any, as determined in accordance with [California Civil Code § 1366], shall

4   be a debt of the owner of the separate interest *at the time the assessment or other sums*

5   *are levied*." (emphasis added)).

6       The Association's right to impose and recover Additional Charges was contingent

7   on whether an Assessment payment was delinquent. *See* Cal. Civ. Code § 1366(e) ("If

8   an assessment is delinquent the association may recover [Additional Charges]."); *see*

9   *also* Cal. Civ. Code § 1367.1(a). As a result, the Association did not have the right to

10  recover attorney's fees and interest until an Assessment became delinquent, and a

11  monthly Assessment was not delinquent until its status remained unpaid on the sixteenth

12  day of that month. *See* Cal. Civ. Code § 1366(e) ("Regular and special assessments . . .

13  are delinquent 15 days after they become due."). Therefore, all Assessments that became

14  due to the Association after the petition date, and any related Additional Charges

15  resulting from these delinquent Assessments, constituted post-petition debt. This is

16  consistent with § 523(a)(16), which clarifies that the post-petition Assessments and

17  Additional Charges are nondischargeable in bankruptcy.

18      The Association contends that all of the charges incorporated into the Personal

19  Judgment are post-petition homeowners' association fees and assessments falling within

20  § 523(a)(16). Arguably, since the subject attorney's fees and interest accrued post-

21  petition or were recorded in post-petition accounting entries, they may be considered

22  "fee[s] or assessment[s] that become[ ] *due and payable after* the order for relief," which

23  are excepted from discharge. § 523(a)(16) (emphasis added). However, that argument

24  conflicts with the last clause of this subsection, which provides that "nothing in this

25  paragraph shall except from discharge the *debt* of a debtor for a membership association

26  fee or assessment *for a period arising before entry of the order for relief* in a pending or

27  subsequent bankruptcy case." *Id.* (emphasis added). This is essentially an exception to

28  the exception. While the attorney's fees and interest at issue here—specifically, those

12

1    relating to the pre-petition debt—arguably may have become due and payable post-

2    petition, they are nevertheless debts "for a period arising before entry of the order for the

3    relief," falling outside the scope of § 523(a)(16).

4        The "Missing" Post-Petition Assessments. The first component of the Personal

5    Judgment is a charge for the Assessments from May 1, 2010 to November 1, 2010 in the

6    amount of $1,505.00 less "payments received" in the amount of $1,075.00.  In other

7    words, the Personal Judgment on its face shows that seven post-petition Assessments

8    came due before the Default Judgment was entered ($1,505 ÷ $215) and that credit was

9    given to the Debtor for having made five of those payments ($1,075 ÷ $215).  The

10   Personal Judgment therefore only includes two post-petition delinquent Assessments,

11   one of which (August  2010) the Association later acknowledged had been "misapplied,"

12   and the other "missing" payment (November 2010) the Association contends was

13   received too late to count in its application for entry of the Default Judgment.  In the

14   Modified Accounting, the Association gave the Debtor credit for all Assessments levied

15   from May through November 2010, prior to entry of the Default Judgment.

16       The Debtor contends that all of her post-petition payments were made timely and

17   that the Association erred by failing to apply some of her payments before they accrued

18   late fees and interest.[14]  The Debtor argues in her Motion that misapplication of the post-

19   petition payments necessarily translates into an inappropriate effort to collect a pre-

20   petition debt, but the Debtor's logic here is lost on the court.  There is no evidence to

21   support a finding that the Association applied any of the post-petition payments to the

22   Assessments that came due before April 23, 2010, the petition date.  Indeed, the

23   Association's counsel  acknowledged in her letter to the Debtor dated October 19, 2010,

24   that pre-petition Assessments could not be collected.  The Association's Accounting

25   does not show any such inappropriate application of payments.  The Association admits

26   _____

27       [14] The Debtor also disputes the Association's contention that some of the "late" payments
     were mailed to the wrong place.  However, this is not an issue that the court needs to address in
28   the context of this Motion.

1   that at least one of the post-petition payments was "misapplied" to a different

2   homeowner's account and that this "misapplied" payment was later adjusted in the

3   Modified Accounting.

4            Still contending that all of her post-petition payments were made timely, the

5   Debtor asks the court to find that she could not be held liable for late fees, interest, and

6   attorney's fees relating to the timely payments. However, timeliness of the payments is

7   not the issue here. In the absence of any evidence to show that the post-petition

8   payments were actually applied to pre-petition debt, the untimely or erroneous

9   application of those payments, for any reason, is not a discharge problem. If the

10  Association was suing to recover delinquent post-petition payments that had actually

11  been made on time, then the Debtor should have responded to the complaint and asserted

12  "payment" as an affirmative defense in the State Court Action. *See Sunlight Elec.*

13  *Supply Co. v. Grossmont Shopping Ctr. Co.*, 226 Cal. App. 2d 110, 117 (1964) ("[T]he

14  burden is on the defendant to prove payment[, and] [t]he defense of payment is

15  affirmative." (citation omitted) (internal quotation marks omitted)); *cf.* Fed. R. Civ.

16  P. 8(c) (listing "payment" as affirmative defense for cases in federal court). Having

17  failed to timely assert her affirmative defense in the State Court Action, the Debtor is

18  barred from raising it here. *See Alpha Mech., Heating & Air Conditioning, Inc. v.*

19  *Travelers Cas. & Sur. Co. of Am.*, 133 Cal. App. 4th 1319, 1331–32 (2005) (discussing

20  application of res judicata to affirmative defenses); *Torrey Pines Bank v. Superior Court*,

21  216 Cal. App. 3d 813, 821–22 (1989); *cf. Four Star Elec., Inc. v. F & H Constr.*, 7 Cal.

22  App. 4th 1375, 1380 (1992) ("[The] default judgment conclusively establishes . . . the

23  truth of all material allegations contained in the complaint in the first action, and every

24  fact necessary to uphold the default judgment; but such judgment is not conclusive as to

25  any defense or issue which was not raised and is not necessary to uphold the judgment."

26  (citations omitted) (internal quotation marks omitted)). On that issue, this court is bound

27  by the Default Judgment and has no authority to disturb that portion of the judgment

28  which simply relates to the erroneous application of post-petition payments. *See*

14

1  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res
2  judicata consequences of a final, unappealed judgment on the merits altered by the fact
3  that the *judgment may have been wrong* or rested on a legal principle subsequently
4  overruled in another case." (emphasis added)); *see also* 28 U.S.C. § 1738 (full faith and
5  credit statute).

6       "Post-Petition" Interest. The second component of the Personal Judgment is a
7  claim for "post-petition" interest in the amount of $635.56, and the Debtor contends that
8  this interest charge was based in part on the pre-petition debt. Based on a review of the
9  Accounting, the court agrees. Here, the Association made two types of errors in its
10 calculation of interest, both of which resulted in the inclusion of pre-petition, discharged
11 interest within the Personal Judgment.

12      First, as discussed above, the Association's right to accrue and recover post-
13 petition interest did not arise until one of the Debtor's post-petition Assessments became
14 delinquent. *See* Cal. Civ. Code § 1366(e). Since no post-petition delinquency occurred
15 until July 16, 2010 (the Association posted the July payment as "late" on July 26), the
16 Association's three entries for "post-petition" interest posted on May 1, June 1, and
17 July 1, 2010, totaling $256.74,[15] can only have been based on discharged *pre-petition*
18 debt. Thus, this amount in the Personal Judgment is void.

19      The second error pertains to the calculation of interest after there had been a post-
20 petition delinquency. The CC&Rs provided the Association with the right to charge
21 12% annual interest on the outstanding balance. *See* Cal. Civ. Code § 1366(e)(3). The
22 accrued interest was calculated on a monthly basis on the first day of each month, taking
23 1% of the entire outstanding balance from the first day of the prior month. For example,
24 the interest charged on April 1, 2010 was $76.46, which represented 1% of the unpaid
25 balance of $7,646.04 due on March 1, 2010.

26

27      [15] In its Accounting, the Association charged interest of $80.06 on May 1, $87.01 on
28 June 1, and $89.67 on July 1, 2010.

15

1    The court appreciates the fact that the Association had to keep an accounting of
2    the entire debt for purposes of the Foreclosure Judgment. However, once the Debtor
3    filed for bankruptcy protection, the Association should have started a new and separate
4    accounting to properly track the post-petition debt that would be covered by
5    § 523(a)(16). It is clear from the Accounting that the Association attempted to divide the
6    "discharged" portion of the Debtor's account from the post-petition portion of her
7    account by simply drawing a line across the Accounting on April 30, 2010, to represent
8    the filing of the bankruptcy. However, once the bankruptcy was filed, the Association
9    could no longer calculate the accruing interest based on the *entire* outstanding balance.
10    Post-discharge, the Debtor was no longer personally liable for the $8,025.50 balance
11    outstanding on the petition date so she should not be held liable for the interest on that
12    balance either. The Association may recover post-petition interest only for the Debtor's
13    unpaid *post-petition* debt. Interest that may accrue post-petition, but that has been
14    calculated based on an unpaid pre-petition balance, constitutes pre-petition interest.

15    Since the July 2010 Assessment was deemed delinquent, August 1, 2010 became
16    the first date on which the Association could begin charging any post-petition interest.
17    On that date, the Association made an interest charge to the Debtor's account in the
18    amount of $90.96 representing 1% of the $9,096.16 balance shown for July 1, 2010.
19    However, that balance included the discharged pre-petition debt of $8,025.50. Although
20    delinquencies were reported in the subsequent months, arguably providing the
21    Association with the right to accrue additional interest, the Association committed the
22    same errors when it calculated interest for those months. Therefore, a substantial portion
23    of the Association's "post-petition" interest charges were actually "for a period arising
24    before entry of the order for relief" and were subject to the discharge. § 523(a)(16).

25    It is undisputed that the Debtor endeavored to pay her post-petition Assessments
26    in an effort to keep her account current, and did in fact do so, although the timeliness of
27    those payments remains in dispute. However, due to the manner in which the
28    Association calculated and charged the post-petition interest, the "balance due" on the

16

1  Debtor's post-petition account could never drop to zero unless the Debtor paid off the

2  *entire* outstanding balance, including the pre-petition debt.  Even if all of the post-

3  petition Assessments had been paid and properly applied on time, her account would

4  continue to accrue interest because the "balance due" in the Association's Accounting

5  included the pre-petition discharged debt, a debt that she was no longer required to pay.

6  Thus, the Association's attempt to recover interest that accrued post-petition, but that

7  was based in part on the Debtor's pre-petition balance, was an attempt to recover a pre-

8  petition debt and violated the discharge injunction.  And to the extent the Personal

9  Judgment included such improper interest charges, that portion of the judgment is void.

10  "Post-Petition" Attorney's Fees.  The third component of the Personal Judgment

11  is a charge for attorney's fees in the amount of $1,075.  As with the interest charges, the

12  Debtor contends that some of these charges related to discharged debt.  For the same

13  reasons discussed above, the court agrees.  With the discharge injunction in place, the

14  Association was prohibited from recovering any attorney's fees relating to the collection

15  of pre-petition debt.

16  Notwithstanding the discharge, the Association was still entitled to recover post-

17  petition attorney's fees, but the CC&Rs must be read in light of the Debtor's discharge to

18  provide that once a *post-petition* Assessment becomes delinquent, the Association

19  acquires the right to recover reasonable attorney's fees incurred in collecting that *post-*

20  *petition* Assessment.  A delinquency on account of an unpaid, *pre-petition* Assessment

21  cannot form the basis for the collection of *post-petition* attorney's fees.

22  As to the Association's first three post-petition entries for attorney's fees, it is

23  clear that the Association incurred these fees for the sole purpose of collecting the *pre-*

24  *petition* debt.  The first entry for attorney's fees was recorded in the amount of $380.42

25  on April 30, 2010, seven days after the petition date and one day before the first post-

26  petition Assessment even became due.  The next two entries for attorney's fees were

27  recorded May 30 and June 30 in the amounts of $179.50 and $39.00, respectively.

28  However, the Debtor timely made the two Assessment payments for these months.

17

There was no post-petition delinquency in the Accounting until July 2010, when the Association posted a late Assessment payment. The Association had no reason or right to incur any attorney's fees on account of a post-petition debt until July 16, the date that the July 2010 Assessment was considered delinquent. The only explanation for these three attorney's fees entries, totaling $598.92, is that the Association incurred the fees in attempting to collect the Debtor's pre-petition, delinquent balance. These attorney's fees therefore constitute a pre-petition debt covered by the discharge, and to the extent the Personal Judgment incorporated these fees, that portion of the judgment is void.

In the next five post-petition months, several delinquencies were posted, including the "late" payment for July 2010, the "misapplied" payment for August, and the "late" payments for September, October, and November. Because of these five post-petition defaults, the Association may have had the right to recover Additional Charges, including attorney's fees, and its Accounting did reflect five entries for attorney's fees, which totaled $955.88.[16]

However, the court cannot determine whether any of these fees were incurred in collecting pre- or post-petition delinquent Assessments. The Association, in its Accounting, did not differentiate between or attempt to apportion (1) the attorney's fees incurred in collecting the entire underlying debt for purposes of determining the Foreclosure Judgment amount, and (2) the fees incurred in collecting only post-petition debt to determine the amount for the Personal Judgment. Without more detailed exhibits or documents from the Association showing how its counsel allocated her time, the court is unable to determine whether these attorney's fees were incurred in collecting pre- or post-petition debts and, as a result, whether these fees themselves constitute pre- or post-petition debt. The court is therefore not persuaded that the charge for attorney's fees

---

[16] The five remaining attorney's fees entries included $21 recorded on July 30, $113.88 on August 31, $102 on September 30, $419 on October 31, and $300 on November 2.

1  totaling $955.88 was proper, and the court notes that this appears to be a substantial sum

2  of attorney's fees for the calculation and inclusion of a minimal post-petition debt in the

3  Default Judgment.

4      Civil Contempt Authority under § 105(a).  A party injured by a violation of the

5  discharge injunction has no private cause of action for damages under § 524 or § 105.

6  *Walls v. Wells Fargo Bank*, 276 F.3d 502, 504 (9th Cir. 2002).  Rather, a violation under

7  § 524(a) is enforced through the bankruptcy court's contempt authority under § 105(a).

8  *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls*, 276 F.3d

9  at 507.

10     The court's contempt authority under § 105(a) is only a *civil* contempt authority

11  and allows only for *civil* sanctions as the appropriate remedy.  *Knupfer v. Lindblade (In*

12  *re Dyer)*, 322 F.3d 1178, 1192 (9th Cir. 2003) (considering contempt sanctions in

13  context of stay violation).  Civil sanctions must either be compensatory or designed to

14  coerce compliance.  *Id.* (citation omitted).  For a discharge violation, "compensatory civil

15  contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees,

16  and the offending creditor's compliance with the discharge injunction." *Walls*, 276 F.3d

17  at 507.

18     "[T]he [aggrieved debtor] seeking contempt sanctions has the burden of proving,

19  by clear and convincing evidence, that the sanctions are justified." *ZiLOG, Inc. v.*

20  *Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006).  And to justify

21  sanctions, the debtor must prove (1) that the offending creditor knew the discharge

22  injunction was applicable and (2) that the creditor intended the actions which violated

23  the injunction. *Bennett*, 298 F.3d at 1069 (citation omitted).  After the debtor meets her

24  burden, the burden then shifts to the creditor to demonstrate why it was unable to comply

25  with the discharge injunction. *See id.* (citation omitted).

26     As to the first element of knowledge, a party cannot be held in contempt for

27  violating an injunction absent actual knowledge of that injunction, and whether a party

28  had such knowledge is a question of fact. *ZiLOG*, 450 F.3d at 1008 (citations omitted).

19

1 Here, the Association knew that the Debtor's discharge injunction applied to all further
2 proceedings in the State Court Action. The Association filed a copy of the discharge
3 order in the State Court Action in order to continue prosecuting its suit against the
4 Debtor. The second element requiring an intentional act has also been met because the
5 Association intended to apply for and obtain the Default Judgment.

6       The Association could argue that it had a good faith belief that it was seeking a
7 money judgment of only post-petition debts. However, the focus of the court's inquiry in
8 contempt proceedings under § 105(a) is not on the subjective belief or intent of the
9 offending creditor in complying with the injunction but on whether, in fact, the creditor's
10 conduct complied with the injunction at issue. *Dyer*, 322 F.3d at 1191 (citation omitted).
11 It does not matter that the Association honestly believed that its actions were proper and
12 that it only intended to pursue the Debtor for post-petition debts. All that matters is that
13 the Association, in fact, violated the discharge injunction, meaning that it intended the
14 actions that resulted in a violation of the injunction, that it knew of the injunction, and
15 that the injunction applied to its actions.

16      Sanctions. Since the Debtor has met her burden, she has established that
17 sanctions are justified in this case, and she has requested an award of attorney's fees. As
18 stated by the Ninth Circuit, an award of attorney's fees to the aggrieved debtor is an
19 appropriate sanction for violating the discharge injunction. *See Walls*, 276 F.3d at 507.
20 But when the court awards reasonable attorney's fees as a sanction, the court must
21 consider two factors: "(1) what expenses or costs resulted from the violation and (2)
22 what portion of those costs was reasonable, as opposed to costs that could have been
23 mitigated." *In re Roman*, 283 B.R. 1, 12 (9th Cir. BAP 2002) (citation omitted) (internal
24 quotation marks omitted).

25      Here, the Debtor would be entitled to attorney's fees in seeking the Association's
26 compliance with the discharge injunction, including the fees incurred in litigating this
27 Motion. *But cf. Sternberg v. Johnston*, 595 F.3d 937, 948–49 (9th Cir. 2009)
28 (disallowing as "actual damages" the attorney's fees incurred in prosecuting § 362(k)

1    claim). However, absent from the Motion is any evidence to show what attorney's fees
2    have been incurred thus far, so the court is unable, at this time, to award attorney's fees
3    or to make a determination as to the reasonableness of those fees. Further, since the
4    Default Judgment is still in the state court's records and represents a cloud on the
5    Debtor's "fresh start," it is clear that the Debtor's counsel still has more work to do.

6        Based on the events that have transpired since the entry of the Debtor's discharge,
7    the court is inclined to award the entirety of the attorney's fees incurred. The Debtor's
8    counsel made repeated attempts to inform the Association's counsel that the Association
9    might be in violation of the discharge injunction. In response to these attempts, the
10   Association's counsel continued to insist that her client's actions were in conformity
11   with the law.

12       Injunctive Relief. Under § 105(a), the court has the authority to "issue any order,
13   process, or judgment that is necessary or appropriate to carry out the provisions of this
14   title." Although the Debtor requests that the court grant injunctive relief to force the
15   Association to return to state court to amend the Personal Judgment, the court believes
16   that such relief is unnecessary. By itself, the Personal Judgment as an unrecorded, civil
17   money judgment has no legal effect against any of the Debtor's property. *See Tassone v.*
18   *Tovar*, 28 Cal. App. 4th 765, 769 (1994). The Association has already withdrawn its
19   abstracts of judgment, and the Association has not attempted to execute the judgment in
20   other ways, such as by attachment or garnishment.

21       Since the court has found that only a portion of the Personal Judgment violates the
22   discharge rather than the entire judgment, the Personal Judgment is only void to the
23   extent that it violates the discharge. *See* § 524(a)(1) ("void[ing] any judgment at any
24   time obtained, *to the extent that such judgment* is a determination of the personal liability
25   of the debtor" (emphasis added)). In other words, the court finds that only that portion of
26   the Personal Judgment that was based on interest and attorney's fees for pre-petition debt
27   violates the discharge injunction and is void.

28

21

1    The Association may wish to enforce the valid portion of the Personal Judgment,

2    but, in order to do so, the Association will have to return to state court to amend the

3    Default Judgment. If the Association attempts to execute on the Personal Judgment in its

4    current, partially void form, then it will have again violated the discharge injunction. As

5    the Bankruptcy Appellate Panel ("BAP") has provided, "[A] creditor has a *duty* to obey

6    the discharge injunction, which duty is a modern corollary of the venerable rule that 'all

7    persons concerned in executing void judgments . . . are considered in law as

8    trespassers.'" *Gurrola*, 328 B.R. at 174 (emphasis in original) (quoting *Elliott v.*

9    *Peirsol's Lessee,* 26 U.S. 328, 340 (1828)). The discharge injunction still remains in

10   place, and it is inappropriate to enjoin a violation of the discharge injunction.

11   *Barrientos*, 633 F.3d at 1190. The Association must conform its conduct within the

12   bounds of § 524. Otherwise, the Association could again commit a discharge violation,

13   be found in civil contempt, and then be subject to additional sanctions.

14       Applicability of the *Rooker-Feldman* Doctrine.  Before concluding, the court will

15   address the Association's argument that the bankruptcy court is precluded from

16   reviewing the Default Judgment under the *Rooker-Feldman* doctrine. The *Rooker-*

17   *Feldman* doctrine is considered a doctrine of jurisdiction. *Olson Farms, Inc. v. Barbosa*,

18   134 F.3d 933, 937 (9th Cir. 1998). The doctrine limits a federal court's ability to directly

19   review a state court judgment on the merits. *See generally D.C. Court of Appeals v.*

20   *Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). It has

21   been applied in the bankruptcy context. *Pavelich*, 229 B.R. at 782 (citation omitted).

22   But its applicability has been limited to "cases brought by state-court losers complaining

23   of injuries caused by state-court judgments rendered before [federal] court proceedings

24   commenced and inviting [federal] court review and rejection of those judgments."

25   *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Here, since

26   the relief requested in the Debtor's Motion necessarily requires this court to review and

27   evaluate the calculations behind the Default Judgment, it would appear that his matter

28   may fall within the scope of the doctrine.

1   Exceptions to the *Rooker-Feldman* doctrine, however, do exist, thereby permitting
2   a federal court's review of a state court judgment.  One such exception is when the state
3   court lacks subject matter jurisdiction over the proceeding before it, otherwise described
4   as "when the state [court] proceeding is a legal nullity and void ab initio." *Pavelich*, 229
5   B.R. at 783 (citing *Kalb v. Feuerstein*, 308 U.S. 433, 438–40 (1940)).  It follows that a
6   judgment entered in a void proceeding is also void, and any such judgment from the state
7   court lacking jurisdiction may be collaterally attacked in federal court.[17]  *Id.* at 782
8   (citing *Fernandez-Lopez v. Fernandez-Lopez (In re Fernandez-Lopez)*, 37 B.R. 664, 669
9   (9th Cir. BAP 1984)).

10   The *Rooker-Feldman* doctrine is not applicable when the bankruptcy court is
11   presented with matters relating to the enforcement of the discharge injunction.  *Id.* at
12   783.  As the BAP has stated, "Regardless of what a state court may do with respect to the
13   personal liability of a discharged debtor, the bankruptcy court has jurisdiction to enforce
14   the statutory discharge injunction."  *Id.*  "The bankruptcy court, of necessity, must be
15   able to ascertain the extent to which [a state court judgment] is void under § 524(a)(1) as
16   an essential element of determining whether the § 524(a)(2) discharge injunction has
17   been violated."  *Id.*  "The statutory voidness and statutory injunction created by § 524(a)
18   operate to strip a state court of the subject matter jurisdiction to require a debtor to pay a
19   discharged debt."  *Id.*  The Motion before this court represents precisely one of those
20   matters over which the bankruptcy court has jurisdiction.  Thus, the *Rooker-Feldman*
21   doctrine does not bar this court's review of the Default Judgment.
22   / / /
23   / / /
24   / / /
25   

26   [17] A "collateral attack" is "[a]n attack on a judgment in a proceeding other than a direct
27   appeal; [especially], an attempt to undermine a judgment through a judicial proceeding in which
    the ground of the proceeding . . . is that the judgment is ineffective."  Black's Law Dictionary
28   298 (9th ed. 2009).

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Default Judgment entered on December 8, 2010, against the Debtor in the Riverside County Superior Court is void and unenforceable to the extent it includes interest and attorney's fees for that portion of the Debtor's account that was discharged in this bankruptcy case. The Debtor's counsel may take such action as is necessary in the state court to have the Default Judgment expunged from the Debtor's record. The Association may not take any further action to enforce its claim against the Debtor unless it obtains from the state court a new judgment properly calculated in compliance with this ruling.

The Debtor will be awarded the full amount of her attorney's fees and costs incurred in the prosecution of this Motion and the further proceedings in the state court, if necessary. The Debtor's counsel shall, within 60 days, file and serve a statement of his fees, and a bill of costs, if appropriate, on the Association and its counsel. Thereafter, the Association will have 14 days to either pay the attorney's fees and costs or file, serve, and set for hearing a detailed objection to the fees and costs which sets forth specifically the basis for its objection to each disputed fee and cost entry.

Dated: August _____ / 5 _____, 2012

W. Richard Lee
United States Bankruptcy Judge

24

FIORE, RACOBS & POWERS
CANYON LAKE POA v. MORENO
File No. 62873-495
30351 Bear River Drive (3716-186)

| Date | Assessments | Installment Charges | Attorney's Fees | Collection Costs | Late Charges | Payments | Interest | Balance |
|---|---|---|---|---|---|---|---|---|
| 1-Aug-08 | 195.00 | 10.00 | | | | | | 205.00 |
| 16-Aug-08 | | | | | 19.00 | | | 224.00 |
| 1-Sep-08 | 195.00 | 10.00 | | | | | 2.05 | 431.05 |
| 16-Sep-08 | | | | | 19.00 | | | 450.05 |
| 17-Sep-08 | | | | 100.00 | | | | 550.05 |
| 1-Oct-08 | 195.00 | 10.00 | | | | | 4.31 | 759.36 |
| 16-Oct-08 | | | | | 19.00 | | | 778.36 |
| 17-Oct-08 | | | | 300.00 | | | | 1,078.36 |
| 1-Nov-08 | 195.00 | 10.00 | | | | | 7.59 | 1,290.95 |
| 16-Nov-08 | | | | | 19.00 | | | 1,309.95 |
| 1-Dec-08 | 195.00 | 10.00 | | | | | 12.91 | 1,527.86 |
| 16-Dec-08 | | | | | 19.00 | | | 1,546.86 |
| 31-Dec-09 | | | 400.00 | | | | | 1,946.86 |
| 1-Jan-09 | 195.00 | 10.00 | | | | | 15.28 | 2,167.14 |
| 16-Jan-09 | | | | | 19.00 | | | 2,186.14 |
| 1-Feb-09 | 195.00 | 10.00 | | | | | 21.67 | 2,412.81 |
| 16-Feb-09 | | | | | 19.00 | | | 2,431.81 |
| 28-Feb-09 | | | 4.42 | | | | | 2,436.23 |
| 1-Mar-09 | 195.00 | 10.00 | | | | | 24.13 | 2,665.36 |
| 16-Mar-09 | | | | | 19.00 | | | 2,684.36 |
| 1-Apr-09 | 195.00 | 10.00 | | | | | 26.65 | 2,916.02 |
| 16-Apr-09 | | | | | 19.00 | | | 2,935.02 |
| 1-May-09 | 205.00 | 10.00 | | | | | 29.16 | 3,179.18 |
| 16-May-09 | | | | | 20.00 | | | 3,199.18 |
| 1-Jun-09 | 205.00 | 10.00 | | | | | 31.79 | 3,445.97 |
| 16-Jun-09 | | | | | 20.00 | | | 3,465.97 |
| 30-Jun-09 | | | 145.00 | | | | | 3,610.97 |
| 1-Jul-09 | 205.00 | 10.00 | | | | | 34.46 | 3,860.43 |
| 16-Jul-09 | | | | | 20.00 | | | 3,880.43 |
| 31-Jul-09 | | | 375.25 | | | | | 4,255.68 |
| 1-Aug-09 | 205.00 | 10.00 | | | | | 38.60 | 4,509.28 |
| 16-Aug-09 | | | | | 20.00 | | | 4,529.28 |
| 30-Aug-09 | | | 217.41 | | | | | 4,746.69 |
| 1-Sep-09 | 205.00 | 10.00 | | | | | 45.09 | 5,006.78 |
| 16-Sep-09 | | | | | 20.00 | | | 5,026.78 |
| 30-Sep-09 | | | 84.00 | | | | | 5,110.78 |
| 1-Oct-09 | 205.00 | 10.00 | | | | | 50.07 | 5,375.85 |
| 16-Oct-09 | | | | | 20.00 | | | 5,395.85 |
| 30-Oct-09 | | | 155.45 | | | | | 5,551.30 |
| 1-Nov-09 | 205.00 | 10.00 | | | | | 53.76 | 5,820.06 |
| 16-Nov-09 | | | | | 20.00 | | | 5,840.06 |
| 1-Dec-09 | 205.00 | 10.00 | | | | | 58.20 | 6,113.26 |
| 16-Dec-09 | | | | | 20.00 | | | 6,133.26 |
| 30-Dec-09 | | | 200.50 | | | | | 6,333.76 |
| 1-Jan-10 | 205.00 | 10.00 | | | | | 61.13 | 6,609.89 |
| 16-Jan-10 | | | | | 20.00 | | | 6,629.89 |
| 30-Jan-10 | | | 332.92 | | | | | 6,962.81 |
| 1-Feb-10 | 205.00 | 10.00 | | | | | 66.10 | 7,243.91 |
| 16-Feb-10 | | | | | 20.00 | | | 7,263.91 |

# EXHIBIT "A"

FIORE, RACOBS & POWERS
CANYON LAKE POA v. MORENO
File No. 62873-495
30351 Bear River Drive (3716-186)

| Date | Assessments | Installment Charges | Attorney's Fees | Collection Costs | Late Charges | Payments | Interest | Balance | |
|------|-------------|---------------------|-----------------|------------------|--------------|----------|----------|---------|---|
| 28-Feb-10 | | | 94.69 | | | | | 7,358.60 | |
| 1-Mar-10 | 205.00 | 10.00 | | | | | 72.44 | 7,646.04 | |
| 16-Mar-10 | | | | | 20.00 | | | 7,666.04 | |
| 30-Mar-10 | | | 48.00 | | | | | 7,714.04 | |
| 1-Apr-10 | 205.00 | 10.00 | | | | | 76.46 | 8,005.50 | |
| 16-Apr-10 | | | | | 20.00 | | | 8,025.50 | BK 4/23/10 |
| 30-Apr-10 | | | 380.42 | | | | | 8,405.92 | |
| 1-May-10 | 205.00 | 10.00 | | | | | 80.06 | 8,700.98 | |
| 14-May-10 | | | | | | (215.00) | | 8,485.98 | |
| 16-May-10 | | | | | - | | | 8,485.98 | |
| 30-May-10 | | | 179.50 | | | | | 8,665.48 | |
| 1-Jun-10 | 205.00 | 10.00 | | | | | 87.01 | 8,967.49 | |
| 7-Jun-10 | | | | | | (215.00) | | 8,752.49 | |
| 16-Jun-10 | | | | | - | | | 8,752.49 | |
| 30-Jun-10 | | | 39.00 | | | | | 8,791.49 | |
| 1-Jul-10 | 205.00 | 10.00 | | | | | 89.67 | 9,096.16 | |
| 16-Jul-10 | | | | | 20.00 | | | 9,116.16 | |
| 26-Jul-10 | | | | | | (215.00) | | 8,901.16 | |
| 30-Jul-10 | | | 21.00 | | | | | 8,922.16 | |
| 1-Aug-10 | 205.00 | 10.00 | | | | | 90.96 | 9,228.12 | |
| 16-Aug-10 | | | | | 20.00 | | | 9,248.12 | |
| 31-Aug-10 | | | 113.88 | | | | | 9,362.00 | |
| 1-Sep-10 | 205.00 | 10.00 | | | | | 92.28 | 9,669.28 | |
| 16-Sep-10 | | | | | 20.00 | | | 9,689.28 | |
| 28-Sep-10 | | | | | | (215.00) | | 9,474.28 | |
| 30-Sep-10 | | | 102.00 | | | | | 9,576.28 | |
| 1-Oct-10 | 205.00 | 10.00 | | | | | 96.69 | 9,887.98 | |
| 15-Oct-10 | | | | | | (215.00) | | 9,672.98 | |
| 16-Oct-10 | | | | | 20.00 | | | 9,692.98 | |
| 31-Oct-10 | | | 419.00 | | | | | 10,111.98 | |
| 1-Nov-10 | 205.00 | 10.00 | | | | | 98.88 | 10,425.86 | |
| 2-Nov-10 | | | 300.00 | | | | | 10,725.86 | |
| | | | | | | | | | |
| | | | | | | | | | |
| Judgment | 5,650.00 | 280.00 | 3,612.44 | 400.00 | 491.00 | (1,075.00) | 1,367.42 | 10,725.86 | |
| (Lien) | | | | | | | | | |
| | | | | | | | | | |
| Post-Pet | 1,435.00 | 70.00 | 1,554.80 | - | 80.00 | (1,075.00) | 635.56 | 2,700.36 | |
| Cost Bill | | | 1,076.68 | | | | 62.90 | 3,839.94 | |
| | | | | | | | | | |
| Total Pers. | 1,435.00 | 70.00 | 2,631.48 | - | 80.00 | (1,075.00) | 698.46 | 3,839.94 | |
| Judgment | | | | | | | | | |
| | | | | | | | | | |
| POST-JUDGMENT DEBT | | | | | | | | | |
| | | | | | | | | | |
| 1-Dec-10 | 205.00 | 10.00 | | | | | | 215.00 | |
| 14-Dec-10 | | | | | | (215.00) | | - | |
| 1-Jan-11 | 205.00 | 10.00 | | | | | | 215.00 | |
| 12-Jan-11 | | | | | | (215.00) | | - | |

FIORE, RACOBS & POWERS
CANYON LAKE POA v. MORENO
File No. 62873-495
30351 Bear River Drive (3716-186)

| Date | Assessments | Installment Charges | Attorney's Fees | Collection Costs | Late Charges | Payments | Interest | Balance |
|------|-------------|---------------------|-----------------|------------------|--------------|----------|----------|---------|
| 1-Feb-11 | 205.00 | 10.00 | | | | | | 215.00 |
| 16-Feb-11 | | | | | 20.00 | | | 235.00 |
| 22-Feb-11 | | | | | | (215.00) | | 20.00 |
| 1-Mar-11 | 205.00 | 10.00 | | | | | 2.15 | 237.15 |
| | | | | | | | | |
| | 820.00 | 40.00 | - | - | 20.00 | (645.00) | 2.15 | 237.15 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Marianne Moreno, Case No. 10-14387-B-7/DC No. PLF-3

Marianne Moreno
P.O. Box 1032
Caruthers, CA 93609

Peter L. Fear, Esq.
Attorney at Law
7750 N. Fresno St., #101
Fresno, CA 93720-1145

Robert A. Hawkins
Chapter 7 Trustee
1849 N. Helm, #110
Fresno, CA 93727

Erin A. Maloney, Esq.
Attorney at Law
6820 Indiana Ave., #140
Riverside, CA 92506-7202

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721